## INMAN v RADJEVICK

Common Pleas Court, Cuyahoga Co

Decided March 10, 1939

Wm. J. Wilson, Cleveland, for plaintiff.
Sydney A. Davies, Cleveland, for defendant.

## OPINION

By SKEEL, J.

On the first day of May, 1937, the plaintiff filed his petition in the Common Pleas Court of Cuyahoga county, Ohio, against the defendant whom he therein designated as Stanley Radjevick with his residence as 4044 West 219th street, Fairview Village, Ohio, in the county of Cuyahoga. In his petition the plaintiff alleges to have been employed by the defendant as a laborer. He alleges that while so engaged in the service of the defendant on or about the 16th day of December, 1936, due to certain acts of negligence on the defendant's part he was injured and asks damages therefor.

The defendant's correct name is Anthony F. Radsvick and his correct address is that given in the petition. The sheriff tried to make service upon the defendant but only at the address given under the name of Stanley Radjevick, and returned the summons "not found." The plaintiff not being cognizant of his mistake in the defendant's first name insisted that he did live at the address given in the petition and therefore filed a precipe for the issuance of an alias summons, whereupon the sheriff returned "residence service on June 12th on the within named Stanley Radjevick." On June 25, 1937, an answer in the form of a general denial was filed, the same being verified by Stanley Radjevick. On the 24th day of January, 1939, more than two years after the alleged injury was claimed to have been suffered by the plaintiff, the plaintiff discovered that the defendant's name was in fact Anthony Radsvick and that Stanley Radjevick was in fact the father of the intended defendant and therefore filed an amended petition by which he asked to correct the mistake in naming Stanley Radjevick instead of Anthony Radsvick, and also alleging in the said amended petition that Anthony F. Radsvick was also known as Stanley Radsvick, and caused a summons to be served upon Anthony F. Radsvick, as to the amended petition.

It was the evident purpose of this amended petition to correct the name of the defendant and not to make a new party defendant in the action. After the service of summons on Anthony F. Radsvick, the father Stanley Radjevick, who was in fact never served with summons and whose residence was some two miles distant from Anthony F. Radsvick, but who voluntarily and by the procurement of Anthony F. Radsvick, filed the answer on June 24, 1937, filed a motion to strike the amended petition from the files. Just what interest Stanley Radjevick would have in voiding the amendment of the petition as to the party defendant to clearly indicate that he, Stanley Radjevick, was not the party intended to be sued, is difficult to understand. The

court is of the opinion that the attempt to use an amended petition as a means of correcting a mistake in the █ name of a party is procedurally incorrect and that the proper way to correct the record would be by motion under §§11360 and 11363, GC. In the interest of justice, however, the court will proceed as if correct procedural methods had been invoked.

Upon the taking of testimony on the defendant's motion to strike the amended petition from the files, the following facts were clearly established:

That the defendant, Anthony F. Radsvick lived at 4044 West 219th street in the village of Fairview; that his correct name is Anthony F. Radsvick; that the defendant's father, Stanley Radjevick, lives on Center road in the village of Dover some two miles distant from that of his son; that the summons in the above entitled case was left at the residence of the intended defendant, Anthony F. Radsvick, and that upon its receipt he saw his father's name indicated thereon, took it to his father's home in the village of Dover, where both he and his father read the summons and the petition, and that the defendant, Anthony F. Radsvick, then knew that the summons was intended for him and not for his father.

On this point, the defendant, upon being questioned by the court, testified as follows:

"Q. You say you read the petition over at your father's house?

"A. Yes.

"Q. You knew that you hired this man? (Referring to plaintiff).

"A. Yes, I did.

"Q. You knew that he had had that accident?

"A. Yes.

"Q. You came to the conclusion, I suppose, that he had made a mistake in the name, is that it?

"A. That is right."

This circumstance is further established and not controverted by the defendant by the statement of defendant's counsel in his brief, as follows:

"The summons naming Stanley Radjevick as defendant was left by the sheriff on residence service at the residence of Anthony F. Radsvick, who, in turn, delivered the same to Stanley Radjevick. Stanley Radjevick then consulted counsel and told his counsel so consulted that the plaintiff had undoubtedly intended to sue Anthony F. Radsvick and not Stanley Radjevick and acting on advice of counsel, Stanley Radjevick signed and filed an answer, denying all of the allegations of the petition."

We have before us therefore clearly the situation of a party whom the plaintiff intended to sue actually receiving notice that suit had been instituted against him and recognizing and knowing that he was intended as a party defendant although service was made upon him under a name which was misspelled as to his last name and improperly designated as to his first name, and the question is whether or not such intended defendant is thereby subjected to the jurisdiction of the court from which the summons has been received.

Before examining the authorities, the court desires to point out that from the facts as thus established, it is very apparent that the intended defendant procured another to file an answer who had never in fact been served in the case for the evident purpose of concealing the mistake in names until the passing of the statute of limitations. In other words the defendant truly intended, and who was in fact served with summons, and who had knowledge of the fact that he was intended to be the defendant, attempted to conceal the mistake until such time as the statute of limitations would preclude his being compelled to meet the issues set forth in the petition.

The defendant cites numerous cases to the effect that new causes of action may not be stated nor new facts brought in by amendment to the petition after the period of limitation as provided by statute has expired.

This proposition of law is well recognized and must be conceded. However, the facts and the circumstances of the case do not raise that point. The question before the court is whether or not where one who is intended to be sued and knows that he is the defendant intended to be sued receives the summons, such circumstances give the court jurisdiction over him with respect to the issues set forth in the petition. A leading case in Ohio is that of **Maloney v Callahan, 127 Oh St, 387.** In this case the defendant was sued as the W. A. Maloney Company, a corporation, and the sheriff, however, finding that there was no such corporation at that address, returned the summons as served on W. A. Maloney, doing business as the **W. A. Maloney Company.**

Paragraphs 4 and 5 of the syllabus, are as follows:

"4. Where summons is duly served on the real party in interest, who is the one actually intended to be sued, even under a wrong or inaccurate appellation, he must take timely advantage of the error by appropriate plea. If he fails to do so, he will be deemed to have waived the defect and will be concluded by the judgment rendered against him."

"5. Under the liberal provisions of §11363, GC, a court in the exercise of its judicial discretion has the power to permit the amendment of a petition by changing a name therein from that of a corporation originally designated as defendant to that of an individual doing business in such corporate name, to correspond with the facts. Thus, allowing an amendment, changing 'The W. A. Maloney Company, as Ohio corporation,' etc., to 'W. A. Maloney, doing business as The W. A. Maloney Company,' is permissible." Nos. 24159, 24,160 and 24161—Decided Dec. 27, 1933.

The following is from the opinion of Judge Zimmerman in this case: (Page 394, 395, 396)

"The weight of authority * * * is that * * * if the writ is served on the party intended to be sued, and he fails to appear and plead in abatement, and suffers judgment to be obtained by default, he is concluded, and in all future litigation may be connected with the suit or judgment by proper averments. So long as the defendant can be identified as the one against whom the judgment was rendered, he is as much bound by the judgment, and those claiming under the judgment are as much entitled to its benefits, to all intents and purposes, as if the defendant had been sued by his right name. This rule applies to corporations as well as to natural persons.

"This principle is enunciated in a little different way in Proctor v Wells Bros. Co., 262 Ill., 77, at page 81, 104 N. E., 186, Ann. Cas. 1915B, 273, where the court says in the opinion:

"Where the real party in interest and the one intended to be sued is actually served with process in the cause, even though under a wrong name, he must take advantage of the misnomer by plea in abatement in such suit, and if he does not he will be concluded by the judgment or decree rendered, the same as if he were described by his true name."

"This court recognizes the same princi-

ple in State ex rel American Union Telegraph Company v Bell Telephone Co, 36 Oh St 296, at page 308, 38 Amer. Rep., 583, where it says:

"It has been suggested that jurisdiction has not been obtained over the American Bell Telephone Company. There is no doubt that the relators intended to prosecute the American Bell Telephone Company, but through ignorance of the true name have designated it by the name of 'The Bell Telephone Company.' The misnomer, however, is not fatal to the jurisdiction. It is shown that service of the writ was in fact made upon the proper agent of 'The American Bell Telephone Company.' It is true, advantage of the mistake might have been taken by plea in abatement, but as the company, by its silence, has shown itself to be content with the name by which it has been sued, the court will regard the objection that otherwise might have been made on the ground of misnomer to have been waived."

"Other cases on the question are: Abilene Independent Telephone & Telegraph Co. v Williams, 111 Tex., 102, 229 S. W., 847; State v Collier, 160 Tenn., 403, 23 S. W. (2d), 897; Stocker v Dobyns-Lantz Hardware Co., 101 Okl., 134, 224 P. 303; Green v Strother, Admr., 201 Mo Ap, 418, 212 S. W., 399; Hitt v Carr, (Ind. Ap.), 150 N. E., 810."

"The object of a summons is to notify a person he has been sued. In this case W. A. Maloney, doing business as the W. A. Maloney Company, was the real party in interest and the one against whom the actions were intended to be commenced. Maloney actually received the summonses. He was not misled, and it was his duty to come promptly into court and interpose any defenses he might have had to the actions."

In support of the plaintiff, attention may be also called to the case of Burton v The Buckeye Insurance Company, 26 Oh St, 467, wherein the plaintiff sued The Buckeye Insurance Company but by mistake issued his precipe for service on the State Fire Insurance Company. The writ, however, was served on The Buckeye Insurance Company, the party intended to be sued. The policy provided that action had to be commenced within twelve months and after the expiration of twelve months the defendant, Buckeye Insurance Company, appeared in court and moved to dismiss. Chief Justice Welch ruled against the motion as follows:

"The real question here is one of construction of the policy: what did the parties mean by the word 'commenced,' in this limiting clause? In common parlance, a suit or action would be considered as 'commenced,' perhaps, when the first step is taken in court. This, under our law, is the filing of the petition. The proviso in the policy being in the nature of a penal provision, it is by no means clear to me that it should not be interpreted in that sense. If this is the true meaning of the parties, then admittedly the suit was commenced in time. But, admitting that such is not the true legal interpretation of the contract, and that the word 'commenced' must have the meaning assigned to it by our code of civil procedure, still it seems to us that the action should be regarded as having been brought within the period limited. If the contract is to be interpreted in the light of the code, it must be interpreted in the light of the whole code, and not merely of a single provision. If the parties are to be held as intending, by the commencement of the action, the issuance of a summons, they must also be held as intending that the summons, if defective in 'form,' or by 'mistake,' might be amended under the 137th section of the code. That this section of the code is broad enough to cover and authorize the amendment, can not well be disputed. The ground assumed is, that although the amendment reaches back and validates the writ ab initio, so far as regards the remedy, effect can not be given to it to invalidate the contract, or cause of action. This is true. But the answer is, that the contract sued upon contemplates the amendment, and, in effect, stipulates that it may be made."

In the case of Caldwell v Furnace Foundry, et, 629 Circuit Court, New Series, the court held that when the petition by mistake designated the defendant as a New Jersey corporation although it was in fact a West Virginia corporation, and the summons likewise mistakenly designated the defendant, the plaintiff could by amendment correct the designation.

In opposition to these authorities, the defendant presents first, the case of Koenich v The Lorain Street Railway Company, Oh Ap, 9th District, 1931. In this case, plaintiff intended to sue the railroad company. Instead, however, he sued the Lorain Street Railway Company. The service named the Lorain Street Railway Company but was actually made upon the agent for the railroad company. The defendant, the street railway company, answered by way of general denial. When the case appeared for trial, it was shown that the railway company was not responsible and that the street car was actually operated by the railroad company. The court refused to allow an amendment to designate the railroad company as the proper defendant.

Except that the statute of limitations is not involved in this case, the court must admit that it presents a fairly substantial parallel to the instant case, but we can not overcome the conclusion that it has been substantially overruled by the case of Maloney v Callahan, supra.

The defendant further presents the case of Uihlein et v Gladieux, 74 Oh St, 232. In this case a judgment had been recovered against a Mrs. William Rogers, first name unknown, on service which was returned at the alleged residence of that party, through action in a justice court. Transcript of the judgment was filed in the Common Pleas Court under the name of Mrs. William Rogers. Her real name was Lucy Rogers. The question before the court was whether or not the judgment lien was valid so as to take precedence over a mortgage actually signed by Lucy Rogers on specific real estate. The court held that it was not, and based its opinion on specific requirements of the then existing statutes which required a plaintiff in a justice court, when suing a person whose first name is unknown, to file a description of the person and to procure personal service. It must be noted, furthermore, that this question involved the interest of innocent third parties as to whether or not the procuring of the judgment and the filing of the transcript without complying with these statutes was sufficient notice to an innocent purchaser. The case therefore presents no parallel to the problem before us.

Also presented by the defendant is the case of Lyons v Donges, 12 Ohio Decisions Reprint, 537 (1856). In this case the real debtor was sued and served with process but wrongfully described as to his christian name. The court refused to allow a motion to compel the sheriff to amend his return to show the real name of the party served. The court, however, did allow the plaintiff to amend his petition after voluntary amendment by the sheriff. This case, therefore, has nothing in it to support the contention of the defendant in the light of the plaintiff's authorities above referred to.

The case of Collins v B. & O. Railroad Company, wrongfully cited in the defendant's brief as 7 N. P., N. S., 270, is actually the case in 7 N. P., 270, and is authority simply for the fact that when a plaintiff intends to serve a railroad company, service of summons on the ticket agent of the receiver for the company is not good service.

The case of **Beech v Union Gas & Electric, 130 Oh St, 280, 4 OO 309,** is not helpful. Here the party intended to be sued was not included in the petition nor served until after the expiration of the statutory limitation.

In conclusion, therefore, the court is compelled to accept the case of **Maloney v Callahan,** as the ruling and leading authority on the question presented and believes that it is conclusive. The court can not do otherwise, in view of this authority, than to hold:

That the object of a summons is to notify a person that he has been sued; that the defendant, Anthony Radsvick has admitted that he knew he was intended to be sued; that his attorney has admitted that he knew that he, the said Anthony Radsvick, was the party intended, even though sued under an inaccurate appellation; that he had a right to take timely advantage by an appropriate plea, which he did not do, and therefore he will be deemed to have waived the defect; that he was the one who was actually served with process; that his father who answered was not served at all.

The court can come to no other finding than that the general denial filed by a party who was not sued was solely for the purpose of continuing to keep alive the deception as to name which existed in the mind of the plaintiff, in order to take advantage of the statute of limitations.

We, therefore, hold, as did the court in the Maloney case, that this defendant actually received the summons. He was not misled, and it was his duty to come promptly into court and interpose any defense he might have had to the action.

The court, therefore, obtained jurisdiction of the defendant, Anthony Radsvick, at the time the original summons was left by the sheriff at his residence and the summons issued by the plaintiff on the amended petition was a mere surplusage.

This defendant, on application, may have reasonable time to plead, and the defendant Stanley Radjevick, his father, will be dismissed from the action. The defendant, Anthony F. Radsvick, may have his exceptions.